## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: Lake Loveland Dermatology, P.C. | Case No. 19-11659 MER |
| Debtor | Chapter 11 |
| | **(Jointly Administered Case No. 19-11650-MER)** |
| Lake Loveland Dermatology, P.C., Skin, P.C., and Kevin John Mott, | Adv. Case No. 19-01117 MER |
| Plaintiffs, | |
| v. | |
| Patrick Lillis, and Tracy Amick, | |
| Defendants. | |

## ANSWER TO COMPLAINT AND COUNTERCLAIMS

Defendants Patrick Lillis ("Lillis") and Tracy Amick ("Amick") (together, "Defendants") through their counsel, for their Answer to the Complaint and Counterclaims in this proceeding commenced by Plaintiffs Lake Loveland Dermatology, P.C. ("LLD"), Skin, P.C. ("Skin"), and Kevin John Mott ("Mott") (together, "Plaintiffs"), hereby state and allege as follows:

### I. ANSWER

### ANSWER TO JURISDICTION AND VENUE

1- 6.    Defendants admit the allegations contained in paragraphs 1 through 6 of the Complaint. Defendants admit that this is a core proceeding and Defendants consent to entry of a final order or judgment by this Bankruptcy Court.

### ANSWER TO PARTIES

7- 11.   Defendants admit the allegations contained in paragraphs 7 through 11 of the Complaint.

## ANSWER TO GENERAL ALLEGATIONS

12 - 20.  Defendants admit the allegations contained in paragraphs 12 through 20 of the Complaint.

21.  In response to paragraph 21 of the Complaint, Defendants admit and aver that in or about August 1979, Lillis formed a previous medical practice, and in or about September 1998, he moved the practice, formed LLD, and subsequently operated under that entity.

22.  In response to paragraph 22 of the Complaint, Defendants admit and aver that Lillis engaged in certain substance abuse infractions, and relinquished his medical license in 2016.

23 - 24.  Defendants admit the allegations contained in paragraphs 23 and 24 of the Complaint.

25.      In response to paragraph 25 of the Complaint, Defendants admit and aver that Lillis had a positive urine test and that Lillis' license was suspended in July, 2014.

26.      In response to paragraph 26 of the Complaint, Defendants admit the existence of the "Non-Disciplinary Interim Cessation of Purchase Agreement".  Defendants aver that the "Non-Disciplinary Interim Cessation of Purchase Agreement" speaks for itself, and deny any factual allegation in paragraph 26 not supported by said document and any legal conclusion set forth therein.

27 - 29.  Defendants admit the allegations contained in paragraphs 27 through 29 of the Complaint.

30 - 31.  In response to paragraphs 30 and 31 of the Complaint, Defendants admit and aver that during the period from approximately October 2015 through approximately October 2016, Lillis, who then was LLD's officer, director, and sole shareholder, was paid by LLD certain amounts as salary. Defendants deny the remaining allegations of paragraphs 30 and 31.

32 - 33.  Defendants deny the allegations contained in paragraphs 32 and 33 of the Complaint.

34.      In response to paragraph 34 of the Complaint, Defendants admit that Lillis, as officer, director, and sole shareholder of LLD, authorized LLD to make certain payments to him. Defendants deny the remaining allegations of paragraph 34.

35 - 38.  Defendants deny the allegations contained in paragraphs 35 through 38 of the Complaint.

39.      Defendants deny the allegations contained in paragraph 39 of the Complaint, except admit and aver that Doctors Mahlberg and Joseph Lillis were terminated as employees of LLD in 2016.

40.      Defendants deny the allegations contained in paragraph 40 of the Complaint, except admit and aver that following the termination of Doctors Mahlberg and Joseph Lillis, LLD's revenues decreased for a period of time.

41 - 42.   Defendants admit the allegations contained in paragraphs 41 and 42 of the Complaint.

43.      In response to paragraph 43 of the Complaint, Defendants admit and aver that in 2016 Lillis relinquished his medical license and sold his medical practice to a licensed medical practitioner.  Defendants deny the remaining allegations of paragraph 43.

44 - 45.  Defendants deny the allegations contained in paragraphs 44 and 45 of the Complaint.

46.  In response to paragraph 46 of the Complaint, Defendants admit and aver that Lillis and Mott, who was the president and sole shareholder of Skin, had certain discussions about Skin purchasing LLD.  Defendants deny the remaining allegations of paragraph 46.

47.  In response to paragraph 47 of the Complaint, Defendants admit and aver that Lillis and Mott had certain discussions about Skin purchasing LLD, and that Lillis informed Mott that Lillis had failed a UA. Defendants deny the remaining allegations of paragraph 47.

48.  In response to paragraph 48 of the Complaint, Defendants admit and aver that Mott had been employed as a dermatologist at LLD since approximately June 1, 2016.  Defendants deny the remaining allegations of paragraph 48.

49.  Defendants deny the allegations contained in paragraph 49 of the Complaint.

50.  In response to paragraph 50 of the Complaint, Defendants admit and aver that Doctors Mahlberg and Joseph Lillis departed LLD, and that their departures resulted in a decrease in LLD's revenues for a period.  Defendants deny the remaining allegations of paragraph 50.

51 - 55.  Defendants deny the allegations contained in paragraphs 51 through 55 of the Complaint.

56.  In response to paragraph 56 of the Complaint, Defendants admit and aver that, until the sale of LLD to Skin, Lillis had owned and operated LLD since its inception.  Defendants deny the remaining allegations of paragraph 56.

57.  Defendants deny the allegations contained in paragraph 57 of the Complaint.

58.  In response to paragraph 58 of the Complaint, Defendants admit and aver that Skin purchased LLD for the agreed upon purchase price of $8,759,000.  Defendants deny the remaining allegations of paragraph 58.

59.  In response to paragraph 59 of the Complaint, Defendants admit and aver that Mott guaranteed payment of the Note and performance of Skin's obligations with respect to the sale of LLD to Skin.  Defendants deny the remaining allegations of paragraph 59.

60.  In response to paragraph 60 of the Complaint, Defendants admit the existence of the Note.  Defendants aver that the Note speaks for itself, and deny any factual allegation in paragraph 60 not supported by said document and any legal conclusion set forth therein.

61 - 63.  Defendants deny the allegations contained in paragraphs 61 through 63 of the Complaint.

64 - 66.  Defendants admit the allegations contained in paragraphs 64 through 66 of the Complaint.

67.  In response to paragraph 67 of the Complaint, Defendants admit and aver that LLD was not a party to the Note.  Defendants deny the remaining allegations of paragraph 67.

68.      In response to paragraph 68 of the Complaint, Defendants admit the existence of the Note.  Defendants aver that the Note speaks for itself and that the alleged writing by Lillis to Mott speaks for itself, and deny any factual allegation in paragraph 68 not supported by said document and any legal conclusion set forth therein.

69.  Defendants admit the allegations contained in paragraph 69 of the Complaint.

70 - 74.  The allegations of paragraphs 70 through 74 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 70 - 74 of the Complaint.

75.  In response to paragraph 75 of the Complaint, Defendants admit and aver that Mott and Lillis agreed that Lillis would be retained by LLD as its Chief Operating Officer pursuant to an employment agreement, the terms of which speak for themselves.  Defendants deny the remaining allegations of paragraph 75.

76.  In response to paragraph 76 of the Complaint, Defendants admit and aver that during his tenure as LLD's Chief Operating Officer following Skin's purchase of LLD, Lillis, among

others, had signatory authority on LLD bank accounts.  Defendants deny the remaining allegations of paragraph 76.

77.  In response to paragraph 77 of the Complaint, Defendants admit and aver that during his tenure as LLD's Chief Operating Officer following Skin's purchase of LLD, Lillis, among others, had authority to initiate wire transfers from LLD's bank account. Defendants deny the remaining allegations of paragraph 77.

78.  In response to paragraph 78 of the Complaint, Defendants admit and aver that during his tenure as LLD's Chief Operating Officer, Lillis, among others, had authority to direct LLD's accountants to make transfers from LLD's bank accounts.  Defendants deny the remaining allegations of paragraph 78.

79.  Defendants admit the allegations contained in paragraph 79 of the Complaint.

80.  In response to paragraph 80 of the Complaint, Defendants admit and aver that, in connection with Skin's purchase of LLD, Lillis and Mott agreed that LLD would retain Amick as its Office Manager following Skin's purchase of LLD.  Defendants deny the remaining allegations of paragraph 80.

81.  In response to paragraph 81 of the Complaint, Defendants admit and aver that, as LLD's Office Manager for a certain period following Skin's purchase of LLD, Amick, among others, had responsibility for maintaining certain of LLD's books and records. Defendants deny the remaining allegations of paragraph 81.

82.  In response to paragraph 82 of the Complaint, Defendants admit and aver that, as LLD' s Office Manager for a certain period following Skin's purchase of LLD, Amick, among others, had access to certain of LLD's books and records. Defendants deny the remaining allegations of paragraph 82.

83. In response to paragraph 83 of the Complaint, Defendants admit and aver that, as LLD' s Office Manager for a certain period following Skin's purchase of LLD, Amick, among others, had certain communications with LLD's accountants with respect to accounting for certain LLD transactions. Defendants deny the remaining allegations of paragraph 83.

84. In response to paragraph 84 of the Complaint, Defendants admit and aver that, as LLD' s Office Manager for a certain period following Skin's purchase of LLD, Amick, among others, had signatory authority on certain  LLD accounts.  Defendants deny the remaining allegations of paragraph 84.

85. In response to paragraph 85 of the Complaint, Defendants admit and aver that, as LLD' s Office Manager for a certain period following Skin's purchase of LLD, Amick, among others, was involved in LLD's determination of its payment of certain obligations during that period.  Defendants deny the remaining allegations of paragraph 85.

86. In response to paragraph 86 of the Complaint, Defendants admit and aver that, as LLD' s Office Manager for a certain period following Skin's purchase of LLD, Amick, among others, was involved in the approval of certain payments made by LLD during that period. Defendants deny the remaining allegations of paragraph 86.

87. Defendants are without sufficient information to admit or deny the allegations contained in paragraph 87 of the Complaint, and therefore deny the allegations.

88. Defendants admit the allegations contained in paragraph 88 of the Complaint.

89. Defendants are without sufficient information to admit or deny the allegations contained in paragraph 89 of the Complaint, and therefore deny the allegations

90. In response to paragraph 90 of the Complaint, Defendants admit and aver that, as Chief Operating Officer of LLD for a certain period following Skin's purchase of LLD, Lillis,

among others, had certain information and knowledge as to certain of LLD's financial affairs. Defendants deny the remaining allegations of paragraph 90.

91.      In response to paragraph 91 of the Complaint, Defendants admit and aver that, as Office Manager of LLD for a certain period following Skin's purchase of LLD, Amick, among others, had certain information and knowledge as to certain of LLD's financial affairs. Defendants deny the remaining allegations of paragraph 91.92 - 93.  Defendants deny the allegations contained in paragraph 92 and 93 of the Complaint.

94 - 95.  Defendants admit the allegations contained in paragraphs 94 and 95 of the Complaint.

96.  Defendants deny the allegations contained in paragraph 96 of the Complaint.

97.  In response to paragraph 97 of the Complaint, Defendants admit and aver that, following Skin's purchase of LLD, certain payments were made to Lillis on behalf of Skin out of LLD's revenue.  Defendants deny the remaining allegations of paragraph 97.

98 - 100.  In response to paragraphs 98 through 100 of the Complaint, Defendants admit and aver that, for a certain period following Skin's purchase of LLD, Lillis was LLD's Chief Operating Officer, that during such period and thereafter certain funds were transferred by LLD to Lillis in satisfaction of Skin's payment obligations to Lillis, and that Amick had knowledge that such payments were being made to Lillis by LLD on Skin's behalf.  Defendants deny the remaining allegations of paragraphs 98 through 100.

101.  Defendants deny the allegations contained in paragraph 101 of the Complaint.

102- 103.  In response to paragraphs 102 through 103 of the Complaint, Defendants admit and aver that LLD, on Skin's behalf, transferred certain amounts to Lillis in partial satisfaction of Skin's payment obligations.  Defendants deny the remaining allegations of paragraphs 102 through 103.

104.    In response to paragraph 104 of the Complaint, Defendants admit and aver that, when Lillis was LLD's Chief Operating Officer during the period of Skin's ownership of LLD, and with Amick's knowledge, certain amounts were transferred by LLD on Skin's behalf to Lillis in partial satisfaction of Skin's payment obligations.  Defendants deny the remaining allegations of paragraph 104.

105 - 106.  Defendants deny the allegations contained in paragraphs 105 and 106 of the Complaint.

107.  Defendants are without sufficient information to admit or deny the allegations contained in paragraph 107 of the Complaint, and therefore deny the allegations.

108 - 109.  Defendants admit the allegations contained in paragraphs 108 and 109 of the Complaint.

110.  In response to paragraph 110 of the Complaint, Defendants admit and aver that LLD hired Pinnacle in or prior to March 2018 to take over the operational and financial management of LLD. Defendants deny the remaining allegations of paragraph 110.

111.  In response to paragraph 111 of the Complaint, Defendants admit and aver that Lillis and Amick provided certain information to Pinnacle's representatives.  Defendants deny the remaining allegations of paragraph 111.

112 - 115.  Defendants deny the allegations contained in paragraphs 112 through 115 of the Complaint.

116.  In response to paragraph 116 of the Complaint, Defendants admit and aver that, Pinnacle, on behalf of LLD and Skin, caused certain payments to be made to Lillis.  Defendants deny the remaining allegations of paragraph 116.

117 - 118.  In response to paragraphs 117 through 118 of the Complaint, Defendants admit and aver that Lillis received certain payments from LLD on behalf of Skin.  Defendants deny the remaining allegations of paragraphs 117 through 118.

119 - 121.  Defendants are without sufficient information to admit or deny the allegations contained in paragraphs 119 through 121 of the Complaint, and therefore deny the allegations.

122.  In response to paragraph 122 of the Complaint, Defendants admit and aver that Pinnacle, on behalf of Skin and Mott, caused LLD to make certain Note payments to Lillis. Defendants deny the remaining allegations of paragraph 122.

123.    In response to paragraph 123 of the Complaint, Defendants admit and aver that LLD, on behalf of Skin and Mott, made certain Note payments to Lillis.  Defendants deny the remaining allegations of paragraph 123.

124 - 125.  Defendants deny the allegations contained in paragraph 125 of the Complaint.

## ANSWER TO FIRST CLAIM FOR RELIEF
**(Fraudulent Conveyance, 11 U.S.C. § 548(a)(1)(A), LLD against Lillis)**

126.    In response to paragraph 126 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 125 of the Complaint.

127 - 130.  The allegations of paragraphs 127 through 130 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 127 through 130 of the Complaint.

## ANSWER TO SECOND CLAIM FOR RELIEF
**(Fraudulent Conveyance, 11 U.S.C. § 544(b)(1), Skin against Lillis)**

131.  In response to paragraph 131 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 130 of the Complaint.

132 - 133.  The allegations of paragraphs 132 through 133 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 132 through 133 of the Complaint.

**ANSWER TO THIRD CLAIM FOR RELIEF**
**(Fraudulent Conveyance, 11 U.S.C. § 544(b)(1),  Mott against Lillis)**

134.     In response to paragraph 134 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 133 of the Complaint.

135 - 136.  The allegations of paragraphs 135 through 136 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 135 through 136 of the Complaint.

**ANSWER TO FOURTH CLAIM FOR RELIEF**
**(Fraudulent Conveyance, 11 U.S.C. § 544(b)(1), LLD against Lillis)**

137.     In response to paragraph 137 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 136 of the Complaint.

138 - 139.  The allegations of paragraphs 138 through 139 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 138 through 139 of the Complaint.

**ANSWER TO FIFTH CLAIM FOR RELIEF**
**(Fraudulent Conveyance, C.R.S. § 38-8-105(1)(a), LLD against Lillis)**

140.  In response to paragraph 140 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 139 of the Complaint.

141- 142.  The allegations of paragraphs 141 through 142 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 141 through 142 of the Complaint.

### ANSWER TO SIXTH CLAIM FOR RELIEF
**(Fraudulent Conveyance, C.R.S. § 38-8-105(1)(b), Skin against Lillis)**

143.     In response to paragraph 143 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 142 of the Complaint.

144 - 146.  The allegations of paragraphs 144 through 146 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 144 through 146 of the Complaint.

### ANSWER TO SEVENTH CLAIM FOR RELIEF
**(Fraudulent Conveyance, C.R.S. § 38-8-105(1)(b),  Mott against Lillis)**

147.  In response to paragraph 147 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 146 of the Complaint.

148- 150.  The allegations of paragraphs 148 through 150 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 148 through 150 of the Complaint.

### ANSWER TO EIGHTH CLAIM FOR RELIEF
**(Contract Reformation, Skin against Lillis)**

151.     In response to paragraph 151 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 150 of the Complaint.

152- 156.  The allegations of paragraphs 152 through 156 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 152 through 156 of the Complaint.

### ANSWER TO NINTH CLAIM FOR RELIEF
**(Contract Reformation, Mott against Lillis)**

157.     In response to paragraph 157 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 156 of the Complaint.

158- 162.  The allegations of paragraphs 158 through 162 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 158 through 162 of the Complaint.

### ANSWER TO TENTH CLAIM FOR RELIEF
### (Civil Theft, C.R.S. § 18-4-401, LLD against Lillis)

163.     In response to paragraph 163 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 162 of the Complaint.

164- 169.  The allegations of paragraphs 164 through 169 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 164 through 169 of the Complaint.

### ANSWER TO ELEVENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty, LLD against Lillis)

170.  In response to paragraph 170 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 169 of the Complaint.

171- 174.  The allegations of paragraphs 171 through 174 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 171 through 174 of the Complaint.

### ANSWER TO TWELFTH CLAIM FOR RELIEF
### (Unjust Enrichment, LLD against Lillis)

175.     In response to paragraph 175 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 174 of the Complaint.

176- 182.  The allegations of paragraphs 176 through 182 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 176 through 182 of the Complaint.

## ANSWER TO THIRTEENTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty, LLD against Amick)

183.  In response to paragraph 183 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 182 of the Complaint.

184 - 188.  The allegations of paragraphs 184 through 188 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 184 through 188 of the Complaint.

## ANSWER TO FOURTEENTH CLAIM FOR RELIEF
### (Civil Conspiracy, LLD against Lillis and Amick)

189.       In response to paragraph 189 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 188 of the Complaint.

190- 193.  The allegations of paragraphs 190 through 193 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 190 through 193 of the Complaint.

## ANSWER TO FIFTEENTH CLAIM FOR RELIEF
### (Violation of the Colorado Organized Crime and Control Act, C.R.S. § 18-17-104(3), LLD against Lillis and Amick)

194.       In response to paragraph 194 of the Complaint, Defendants repeat and incorporate herein their answers to paragraphs 1 through 193 of the Complaint.

195 - 199.  The allegations of paragraphs 195 through 199 state legal conclusions and therefore do not appear to call for a response.  To the extent a response is required, Defendants deny the allegations contained in paragraphs 195 through 199 of the Complaint.

## GENERAL DENIAL

Defendants deny the allegations in the prayers for relief and WHEREFORE clauses under each claim for relief, deny that Plaintiffs are entitled to the relief requested therein.

Defendants deny each and every allegation in the Complaint, excepting only those they have specifically admitted or qualified above.

## AFFIRMATIVE DEFENSES

1.      Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

2.      Plaintiffs' claims are frivolous, substantially groundless, or substantially vexatious, thereby entitling Defendants, pursuant to C.R.S. § 13-17-101, *et seq*., to an award of their attorneys' fees and costs incurred in defending this action.

3.      Plaintiffs' claims are barred, in whole or in part, by reason that, at all relevant times, Lake Loveland Dermatology, P.C. was solvent and was not rendered insolvent or left with unreasonably small capital as a result of any transactions with the Defendants.

4.      Plaintiffs' claims are barred, in whole or in part, by operation of 11 U.S.C. § 548(c).

5.      Plaintiffs' claims are barred, in whole in part, because the Plaintiffs received reasonably equivalent "value" as defined under 11 U.S.C. § 548(d)(2)(A) in exchange for the alleged transfers.

6.      Plaintiffs' claims are barred, in whole or in part, pursuant to 11 U.S.C. § 550(b) by reason that Lillis, to the extent he took any transfers, took the alleged transfers for value, in good faith and without knowledge of the avoidability of the alleged transfers.

7.      Plaintiffs' claims are barred, in whole or in part, by operation of C.R.S. § 38-8-109(1).

8.      Plaintiffs' claims are barred, in whole or in part, by operation of C.R.S. § 38-8-109(4).

9.      Plaintiffs' claims are barred, in whole or in part, by operation of C.R.S. § 38-8-109(6).

10.     Plaintiffs lack standing to assert certain of their claims.

11.     Plaintiffs' claims are barred in whole in part because the Plaintiffs received reasonably equivalent "value" as defined under C.R.S. § 38-8-104 in exchange for the alleged transfers.

12.     Plaintiffs have failed to plead their claims with the particularity required under Fed.R.Bank.P. 7008 and 7009(b), and C.R.C.P. 8, and 9(b).

13.     Plaintiffs' claims are defective as a matter of law because they are not based on material misrepresentations or omissions of fact by Defendants.

14.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

15.     Plaintiffs' claims are barred, in whole or in part, due to lack of scienter.

16.     Plaintiffs' claims are barred, in whole or in part, by the economic loss rule, the business judgment rule, and the applicable statutes of limitations.

17.     Plaintiffs' claims are barred, in whole or in part, by laches, waiver, estoppel, acquiescence, ratification, and/or consent.

18.     Plaintiff's recovery, if any, is barred by its breach of its duty of good faith and fair dealing.

19.     Note payments to Lillis by LLD on behalf of the Counterclaim Defendants were made with the full knowledge and authorization of Mott, who owned and controlled Skin and LLD, and Counterclaim Defendants were obligated to make such payments pursuant to the terms of the Note and Guaranty.

20.     Plaintiffs have failed to mitigate their damages, if any.

21.     Defendants reserve the right to add, amend, supplement, or modify their affirmative defenses.

WHEREFORE, Defendants request that the Court enter judgment in their favor and against Plaintiffs on each of Plaintiffs' claims, award Defendants their attorneys' fees and costs incurred in defending the Complaint as appropriate under applicable law, and grant such further relief as the Court deems proper.

## II. COUNTERCLAIMS

Counterclaim Plaintiff Lillis, for his Counterclaims against Skin, P.C. and Mott (sometimes together in these Counterclaims referred to as "Counterclaim Defendants"), alleges the following:

## PARTIES, JURISDICTION, AND VENUE

1.     Counterclaim Plaintiff Lillis is an individual residing at 4845 Valley Oak Drive, Loveland, Colorado 80538.

2.     Counterclaim Defendant Skin is a Colorado professional corporation with its principal office at 905 Alpine Avenue, Boulder, Colorado 80304.

3.     Counterclaim Defendant Mott is an individual residing at 9626 Mountain Ridge Drive, Boulder, Colorado 80302.

4.     This Court has original jurisdiction of these matters pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(1) in that they arise under Title 11 of the United States Code.

5.     These Counterclaims are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

7.     This Bankruptcy Court has the constitutional authority to enter a final judgment regarding these Counterclaims.  Pursuant to Fed.R.Bankr.P. 7008, Lillis consents to entry of final orders or judgments by this Bankruptcy Court.

## **GENERAL ALLEGATIONS**

8.     In connection with its purchase from Lillis of all LLD stock, Skin executed in favor of Lillis a promissory note dated as of October 16, 2016, in the principal amount of $8,759,000 (the "Note").

9.     In connection with Skin's execution of the Note and its purchase of all LLD stock, Mott executed, in favor of Lillis, a personal guaranty of the Note (the "Guaranty").

10.     The Note and Guaranty were executed in connection with the LLD stock purchase transaction between Lillis and Counterclaim Defendants, as evidenced by a Stock Purchase Agreement dated as of October 16, 2016 between Lillis and Skin, acting through Mott ("Agreement"). Counterclaim Defendants were represented by counsel in connection with the negotiation, preparation, and execution of the Agreement, as well as the Note and Guaranty.

11.     In Section 5 of the Agreement, Skin represented and warranted to Lillis, among other things, the following:

> (d)     ***Inspection.***  Buyer has had the opportunity to inspect the records and books of the Company and the Company's assets to determine if they are acceptable to Buyer.  All instruments, documents, records and books pertaining to the Company, its assets and this investment, and requested by Buyer, have been made available to Buyer and its attorney, accountant and/or other agents.   Buyer warrants that Buyer has investigated the Company (including, without limitation, the financial status of the Company and the full condition of the Company's assets) to its satisfaction.  Notwithstanding any other provision herein, to the extent that Buyer did not request specific documents and materials from the Seller or the Company, or stated that Buyer did not desire to review such documents and materials, such documents and materials were not provided to Buyer.

> (e)     ***Employment by Company***.  Buyer has been employed by the Company since June 1, 2016 as a physician, and therefore has a degree of familiarity with the operation of the Company, commensurate with such employment term.

* * *

(f)   ***Risk Factors; No Duress***.  Buyer has had the opportunity to determine the risk factors involved in the purchase of the Shares, and has used its own judgment in weighing the risk.  Buyer's intention to invest is made without duress, and without any promise or representation by Seller or the Company of any future gains, profits, or dividends.

(h)   ***Acknowledgement of Risks***.  Buyer (i) has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Shares . . .

12.   At Section 9(h) of the Agreement Skin agreed that it had the opportunity to retain its own independent legal and financial counsel with respect to the negotiation of the Agreement, and that Skin independently, separately, and freely negotiated each and every provision of the Agreement.

13.   In connection with Counterclaim Defendants' LLD stock purchase and the parties' negotiation and execution of the Agreement, the Counterclaim Defendants caused LLD to enter into with Lillis an Employment Agreement effective as of October 16, 2016, by which Lillis was to serve as LLD's Chief Operating Officer subject to the direction of its owner Skin, and Skin's owner Mott.  The Employment Agreement, at Section 7(a), gave to LLD, and hence to Skin and Mott as the effective owner of LLD, the right to terminate Lillis' employment with or without cause, and with no prior notice to Lillis.

14.   Under Section 2 of the Note, Skin was required to make 120 equal monthly payments of principal and interest, each in the amount of $89,977.40, in accordance with the amortization table attached to the Note as Exhibit A, with a first payment due and payable on May 1, 2017, and each subsequent payment due on the first day of each month thereafter until paid in full.

15.     Section 10 of the Note provides:

***Financial Reporting.*** Within thirty (30) days following the end of each calendar month, Maker shall deliver to Holder monthly balance sheets and income statements of Maker and the Company. Such financial statements shall be prepared in accordance with Maker's and the Company's past practices for reparation of their respective monthly financial statement, and shall be correct and complete in all material respects and present fairly, in all respects, the financial position and the results of the operations of Maker and the Company for the periods indicated.

16.     Section 12 of the Note provides:

***Remedies.*** Upon the occurrence of an Event of Default, the entire outstanding Principal Sum, all accrued but unpaid interest, and any damages, penalties, fees, costs or other charges accrued thereon shall become immediately due and payable without the requirement of any notice from Holder to Maker, and the Principal Sum shall immediately bear interest at the rate of twelve percent (12%) per annum from the date of such Event of Default. Holder shall have all of the rights, powers, and remedies available under the terms of this Note, the Purchase Agreement, and all applicable laws. Maker and all endorsers, guarantors, and other parties who may now or in the future be primarily or secondarily liable for the payment of the indebtedness evidenced by this Note hereby severally waive presentment, protest and demand, notice of protest, notice of demand and of dishonor and non-payment of this Note and expressly agree that this Note or any payment hereunder may be extended from time to time without in any way affecting the liability of Maker, guarantors and endorsers. Each right, power and remedy of Holder as provided for in this Note or now or hereafter existing under any applicable law or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in this Note or now or hereafter existing under any applicable law. No failure or delay by Holder to insist upon the strict performance of any term, condition, covenant, or agreement of this Note or to exercise any right, power or remedy upon a breach thereof shall constitute a waiver of any such term, condition, covenant, or agreement or of any such breach, or preclude Holder from exercising any such right, power, or remedy at a later time or times. By accepting payment after the due date of any amount payable under the terms of this Note, Holder shall not be deemed to waive the right either to require prompt payment when due of all other amounts payable under the terms of this Note or to declare an Event of Default for the failure to effect such prompt payment of any such other amount.

17.     By letters dated June 6, 2018 and June 20, 2018, Counterclaim Defendants were provided by Lillis (through counsel) written notice of Counterclaim Defendants' failure to pay in full, the May 2018 Note installment payment.

18.     In the June 6, 2018 letter Lillis (through counsel) referenced an earlier written notice, sent by him to Counterclaim Defendants on May 22, 2018, notifying Counterclaim Defendants that Skin was in default of its obligations to provide the monthly financial reporting required under Paragraph 10 of the Note.

19.     In his June 20, 2018 letter Lillis (through counsel) disputed Counterclaim Defendants' contention that the May 2018 payment had been made, and notified Mott of his failure to pay in full the monthly installment payments for April, May, and June 2018.

20.     As of June 20, 2018, Counterclaim Defendants had tendered to Lillis only six total payments under the Note, for an aggregate amount of $465,205.08.

21.     As of June 20, 2018, a total of fourteen Note installments had become due and payable in the aggregate amount of $1,259,683.60.

22.     As of June 20, 2018, Counterclaim Defendants caused a Note payment deficiency in the amount of $794,478.52, without giving effect to the Note's default interest provision.

23.     Following the Counterclaim Defendants' defaults under both the Note and Guaranty, Lillis, on July 27, 2018, caused to be filed in the District Court, City and County of Denver, Civil Action No. 2018CV032388, ("State Court Action"), in which Lillis asserted a claim against Skin for breach of the Note, and a claim against Mott for breach of the Guaranty.

24.     Following the transmittal of the June 20, 2018 letter, and the filing of the State Court Action, the Counterclaim Defendants continued to breach Skin's obligations to Lillis under the Note.  Such breaches included, but were not limited, to the following:

a.      The amount that was due under the Note no later than June 10, 2018 was not paid; the amount paid by Counterclaim Defendants on June 28, 2018 was for less than that the amount due under the Note;

b.      Counterclaim Defendants failed to provide to Lillis Skin's May 2018 financial statement, as required under the Note, within thirty days of the notice of default dated May 22, 2018 provided to Counterclaim Defendants;

c.      Skin failed to pay the entire balance due under the Note following notice of an event of default and acceleration dated June 6, 2018;

d.      The amount that was due under the Note no later than July 10, 2018 was not fully and/or timely paid;

e.      Skin failed to pay the entire balance due under the Note following notice of an event of default and acceleration dated July 11, 2018;

f.      The amount that was due under the Note no later than  August 10, 2018 was not fully and/or timely paid;

g.      Skin failed to pay entire balance due under the Note following notice of an event of default and acceleration dated August 6, 2018;

h.      The amount that was due under the Note no later than September 10, 2018 was not fully and/or timely paid;

i.      Skin failed to pay entire balance due under the Note following notice of an event of default and acceleration dated September 8, 2018;

j.      The amount that was due under the Note no later than October 10, 2018 was not fully and/or timely paid;

k.      Skin failed to pay entire balance due under the Note following notice of an event of default and acceleration dated October 8, 2018;

l.      The amount that was due under the Note no later than November 10, 2018 was not fully and/or timely paid;

m.      The amount that was due under the Note no later than December 10, 2018 was not fully and/or timely paid;

n.      Counterclaim Defendants failed to provide to Lillis the December 2018 financial statement  as required under the Note, within thirty days of notice of default dated January 17, 2019  provided to Counterclaim Defendants;

o.      The amount that was due under the Note no later than January 10, 2019 was not timely paid.  Counterclaim Defendants took inconsistent positions concerning the January 2019 payment, arguing first in correspondence dated January 2, 2019 that the payment made on January 2, 2019 (as reduced by November 2018 financial performance) was the January 2019 installment payment, and then on January 31, 2019 arguing that they were not obligated to make the January 2019 payment based on LLD's financial performance in December 2018.  In any event, the proper payment was not made, nor did Counterclaim Defendants give timely notice of deferral as provided in the Note; and

25.      By letter dated January 17, 2019, Lillis (through counsel) advised Counterclaim Defendants that Skin's January 2019 Note installment payment was not made in accordance with the terms of the Note, and therefore constituted an event of default.

26.     Pursuant to Section 2 of the Note Skin was obligated to make a base payment of $89,977.40 on the first of each month. Section 5(a) of the Note allows for the reduction of payments under certain circumstances, providing in relevant part that:

> In the event that the annual revenue of the Company in any given calendar year does not exceed Six Million Nine Hundred Thousand and no/100 Dollars ($6,900,000), Maker, upon written notice to Holder, may reduce the amount of the monthly payment described in Section 2 above for a period of one (1) year by fifty percent (50%).

27.     Section 5(b) of the Note further provides in relevant part that:

> In the event that the monthly revenue of the Company in any given month does not exceed Five Hundred Seventy-Five Thousand and no/100 Dollars ($575,000) (the *"Monthly Target"*), Maker, upon written notice to Holder, may reduce the amount of the next monthly payment described in Section 2 above by the amount by which the Monthly Target exceeds the actual monthly revenue for such month.

28.     Under Section 5 of the Note, Skin may reduce the monthly payment set forth in Section 2 of the Note ($89,977.40) either (a) for a period of one year by 50% in the event that the annual revenue of the Company in any given calendar year does not exceed $6.9 million, or (b) for a one month period in the amount by which the Monthly Target exceeds the prior month's actual monthly revenue.  Skin's right to a one month reduction pursuant to Section 5(b) of the Note was limited to a reduction "of the next monthly payment".  Importantly, Skin's right to a reduction of payments under Section 5 was subject to written notice to be provided by Skin to Lillis.

29.     In its January 3, 2019 letter, Skin asserted that LLD's annual revenues for 2017 fell below $6.9 million, and the monthly payments for all of 2018 were reduced by 50%. However, Skin's right to a reduction of its monthly payments in 2018 based on the LLD's 2017 annual revenue expired and was not a proper basis to reduce the January 2019 Note installment payment by 50%.

30.     A right to a payment reduction for the January 2019 Note installment payment was required under the Note to be based either on the Company's 2018 annual revenue under Section 5(a), or its December 2018 monthly revenue under Section 5(b), and Skin was required to provide Lillis written notice of such a reduction.  Yet, Skin did not provide Lillis written notice of a purported basis to reduce the January 2019 Note installment payment pursuant to Section 5(a) or (b) of the Note.  Accordingly, the January 2019 Note installment payment should have been in the amount of $89,977.40.  Skin's partial payment constituted an event of default under Section 11 of the Note.

31.     Skin continued to be in breach of its financial reporting obligations pursuant to Section 10 of the Note, which provides that Skin shall deliver to Lillis monthly balance sheets and income statements of Skin and Lake Loveland Dermatology, P.C. "[w]ithin thirty (30) days following the end of each calendar month…".  Skin delivered financial statements from several months prior to the current calendar month.  By way of example, the financial statements delivered with the January 2019 Note installment payment were for the eleven prior months ended November 30, 2018.  Pursuant to Section 10 of the Note, such financials should have been delivered by December 30, 2018.

32.     Skin's failure to timely deliver financial statements for the proper period (*i.e.,* up to and including the prior calendar month) impeded Lillis' ability to account for the payment received and determine whether Skin had additional payment obligations under Section 5 of the Note.

33.     By his January 17, 2019 letter, Lillis provided to Counterclaim Defendants notice, pursuant to Section 11(a) of the Note, of Skin's failure to comply with its financial reporting obligations, and demanded that Skin comply with Section 10 of the Note by providing the

required financial statements for the month immediately prior within thirty days following the end of each month.

34.     While Paragraph 5 of the Note provides for the possible deferral of a portion of the monthly installment payments due under the Note, the conditions to such reduction or deferral were not fulfilled by Counterclaim Defendants, who failed to provide the accounting necessary in support of any claim to any right to reduce or defer a monthly installment payment under Paragraph 5 of the Note.

35.     Pursuant to the terms of the Note, amounts unpaid as a result of a proper reduction of payments pursuant to Section 5 accrue and continue to bear interest and remain owed to Lillis in accordance with the terms of the Note.  As Skin has reduced payments pursuant to Section 5, deferred payments have accrued and continue to bear interest.

36.     Counterclaim Defendants failed to cure their defaults by making the full monthly installment payments due under the Note.

37.     Counterclaim Defendants failed to cure their defaults by providing to Lillis the financial reporting required under the Note.

38.     On the virtual eve of the scheduled taking of depositions in the State Court Action of persons then involved in the operation of LLD and its medical practice, Mott caused to be filed, on March 8, 2019, separate bankruptcy petitions for himself and for Skin and LLD, in an effort to prevent Lillis from enforcing, or to attempt to renegotiate, the valid and enforceable contractual obligations that had been negotiated by the parties and their professional representatives, as memorialized by the Agreement, Note, and Guaranty, among other agreements.

39.     Skin's filing of its bankruptcy proceeding constitutes an event of default under Section 11(c) of the Note.

## FIRST COUNTERCLAIM FOR RELIEF
### (Damages - Breach of Note)

40. Lillis repeats and realleges Paragraphs 1 through 39, above.

41. Skin is in default of the Note, and its defaults were material.

42. As a consequence of Skin's default of the Note, all amounts due under the Note became immediately due and payable.

43. As a consequence of Skin's default of the Note, interest is accruing and owing.

44. As of June 27, 2018, Skin was liable to Lillis under the Note for payment of the principal sum of $8,293,794.92, plus interest, in amounts to be proven at trial.

45. Under Section 14 of the Note, Lillis is entitled to recover his attorneys' fees and costs incurred in enforcing the Note.

46. Lillis has performed any and all alleged obligations owed by him to Skin under and/or related to the Note, or Lillis' performance of such alleged obligations was excused and/or justified due to Skin's non-performance and breach.

## SECOND COUNTERCLAIM FOR RELIEF
### (Damages – Breach of Guaranty)

47. Lillis repeats and realleges Paragraphs 1 through 46, above.

48. Under the terms of the Guaranty, and as a result of Skin's defaults of the Note, Mott is liable to Lillis for payment of all amounts due under the Note, including interest, default interest, attorneys' fees and costs of collection.

49. Despite Lillis' written demand contained in his June 6, 2018 and June 20, 2018 letters, Mott has failed to pay Lillis, pursuant to the terms of the Guaranty, all amounts due under the Note.

50. Section 5 of the Guaranty provides:

*Subordination.* Guarantor agrees that if a default or an event of default has occurred under any of the Purchase Documents and all applicable cure periods have expired, then Guarantor will be subordinated to the rights of Seller to receive payments from, or distributions of the assets of, Buyer until all amounts due from Buyer to Seller under the Note have been paid in full.

51.     By his June 6, 2018 and June 20, 2018 letters, Lillis demanded that Mott perform his payment and other obligations under the Guaranty.  Mott refused and failed to do so.

52.     Lillis also notified Mott in the June 6, 2018 letter, that pursuant to Section 5 of the Guaranty, he was prohibited from receiving any payments from Skin, and any violation of this obligation would lead to an additional claim.

53.     In the June 6, 2018 letter, Lillis demanded, pursuant to Section 5 of the Guaranty, that any payments received by Mott from Skin be retained and held in trust for the benefit of Lillis.  Despite such demand, Mott refused to do so, thereby further breaching the terms of the Guaranty.

54.     Mott's default of his obligations under the Guaranty was material.

55.     Section 9 of the Guaranty provides that if any amounts paid to Lillis are recovered from Lillis in any bankruptcy proceeding, Mott shall reimburse Lillis for all such amount recovered from Lillis.

56.      Lillis has performed any and all alleged obligations owed by him to Mott under and/or related to the Guaranty, or Lillis' performance of such alleged obligations was excused and/or justified due to Mott's non-performance and breach.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff Lillis requests that the Court grant the following relief:

A.      Entry of judgment in Lillis' favor and against Counterclaim Defendants Skin and Mott, jointly and severally, for all amounts due under the Note and Guaranty, in amounts to be proven at trial;

B.      An award in Lillis' favor and against Skin and Mott, jointly and severally, for interest and default interest due under the Note and Guaranty, plus attorneys' fees and costs;

C.      Such further legal and/or equitable relief as the Court deems proper.


Dated:  May 24, 2019

SENN VISCIANO CANGES P.C.


*s/ Frank W. Visciano* [Orig. Sig. on File]
Frank W. Visciano, #7274
Charles E. Fuller, # 43923



MARKUS WILLIAMS YOUNG & HUNSICKER LLC


*s/ Matthew T. Faga* [Orig. Sig. on File]
Matthew T. Faga, #41132
Jennifer M. Salisbury, #37168

*ATTORNEYS FOR DEFENDANTS
AND COUNTERCLAIMANTS*