# UNITED STATES BANKRUPTCY COURT
## District of Colorado

| | | |
|---|---|---|
| In re: | LAKE LOVELAND DERMATOLOGY, P.C.<br>Debtor. | Case No.<br>19-11659 MER<br><br>Chapter 11 |
| | LAKE LOVELAND DERMATOLOGY, P.C.<br>SKIN, P.C.<br>KEVIN JOHN MOTT<br><br>Plaintiffs<br><br>v.<br><br>PATRICK LILLIS<br>TRACY AMICK,<br><br>Defendants | Adv. Proc. No.<br>19-01117-MER |

## OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT PURSUANT TO F.R.C.P. 15(a)

Defendants Patrick Lillis ("**Lillis**") and Tracy Amick ("**Amick**"), by their undersigned counsel, respectfully submit this opposition to the Motion for Leave to File Amended Complaint Pursuant to F.R.C.P. 15(a) ("**Motion**", ECF No. 19) filed by Plaintiffs Lake Loveland Dermatology, P.C. ("**LLD**"), Skin, P.C. ("**Skin**") and Kevin John Mott ("**Dr. Mott**").

### I.   Introduction

Dr. Kevin Mott ("**Dr. Mott**"), through his wholly owned company Skin P.C. ("**Skin**"), purchased Lillis' ("**Lillis**") dermatology practice in a transaction that closed on October 16, 2016. Dr. Mott, represented by counsel in the negotiations, signed for Skin (among other

{00665097.DOCX / 1}                                              1

agreements) a comprehensive Stock Purchase Agreement ("**SPA**", <u>**Exhibit A**</u> hereto) [1] and a Promissory Note ("**Note**"), reflecting the purchase price of $8,759,000, as well as his personal guaranty ("**Guaranty**"). The dermatology practice was owned and operated by Lillis' wholly owned company, LLD, where Dr. Mott had been employed since June 1, 2016. As part of the purchase transaction, Dr. Mott and Skin assumed a June 1, 2016 medical office lease ("**2016 Lease**") LLD had at 776 West Eisenhower Blvd., Loveland, Colorado ("**LLD Offices**"), which was owned by 790 Eisenhower, LLC, another Lillis wholly owned company.

In Section 5 of the SPA, Skin represented and warranted to Lillis (among other things) the following:

> (d) *Inspection.* Buyer has had the opportunity to inspect the records and books of the Company and the Company's assets to determine if they are acceptable to Buyer. **All instruments, documents, records and books pertaining to the Company, its assets and this investment, and requested by Buyer, have been made available to Buyer and its attorney, accountant and/or other agents. Buyer warrants that Buyer has investigated the Company (including, without limitation, the financial status of the Company and the full condition of the Company's assets) to its satisfaction.** Notwithstanding any other provision herein, to the extent that Buyer did not request specific documents and materials from the Seller or the Company, or stated that Buyer did not desire to review such documents and materials, such documents and materials were not provided to Buyer.
>
> (e) *Employment by Company.* Buyer has been employed by the Company since June 1, 2016 as a physician, and therefore has a degree of familiarity with the operation of the Company, commensurate with such employment term.
>
> (f) *Risk Factors; No Duress*. **Buyer has had the opportunity to determine the risk factors involved in the purchase of the Shares, and has used its own judgment in weighing the risk.** Buyer's intention to invest is made

---

[1] Plaintiffs did not attach the SPA to their Adversary Complaint, but the SPA is at the center of their Complaint and specifically referred to in Paragraph 51. "It is accepted practice that, 'if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.'" *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001) (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997)).

> without duress, and without any promise or representation by Seller or the Company of any future gains, profits, or dividends.

\* \* \*

> (h) *Acknowledgement of Risks*. **Buyer** (i) has such knowledge and experience in financial and business matters as to be **capable of evaluating the merits and risks of an investment in the Shares** . . .

Emphasis added

At PSA Section 9(h), Skin agreed that it had the opportunity to retain its own independent legal and financial counsel in negotiating the PSA, and that Skin independently, separately, and freely negotiated each PSA provision.

Section 6 ("Covenants") of the SPA provided, in pertinent part:

> **(d)    Leases.** Buyer acknowledges that the Company is currently the tenant under two leases, both dated as of June 1, 2016, with 790 Eisenhower, LLC, a Colorado limited liability company *("Landlord")*, as landlord for real property located at 6801 W 20th Street, Suite (d) 202, Greeley, CO 80634 and 776 W Eisenhower Blvd, Loveland, CO 80537 (collectively, the *"Leases"*). Simultaneously herewith, Seller shall ensure that Landlord executes a written consent to the sale of the Shares pursuant to Section Twenty-Seven of the Leases in substantially the form attached hereto as **Exhibit D** (collectively, the "*Landlord Consents*").

A written Consent ("**Consent**", **Exhibit B**, hereto, and was Exhibit D to the SPA) [2] that was signed by Dr. Mott as President of both LLD and Skin – on behalf of the "Tenant" – provided relative to the 2016 Lease the following:

> 3. *No Default by Landlord*. As of the date hereof, there are no defaults existing under the Lease on the part of Landlord or, to Landlord's knowledge, no events have occurred that, with the passage to time or the giving of notice, or both, would constitute a default by Landlord under the Lease; there is no existing basis for **Tenant to cancel or terminate the Lease; there exist no defenses, offsets, credits, deductions in rent or claims against the enforcement of any of the agreements, terms, covenants or conditions of the Lease; there exist no defenses, offsets, credits, deductions in rent or claims against the enforcement of any of the agreements, terms, covenants or conditions of the Lease; and there are no unexpired free rent periods, rent concessions or**

---

[2] *See* footnote 1; the Consent was part of the SPA and the purchase transaction.

> **other unpaid allowances (including, without limitation, unpaid tenant improvement allowances) owing to Tenant.**
>
> 4. *Possession of Premises.* **Tenant has accepted and is now in possession of the Premises and is paying the rental under the Lease pursuant to the provisions of the Lease. . .**
>
> * * *
>
> **CONSENTED AND AGREED TO BY:**
>
> **The Tenant, and the Purchaser as the sole shareholder of the Tenant following the closing of the transactions described in the Purchase Agreement, acknowledge, ratify, and confirm the continued validity and enforceability of the Lease . . .**

Emphasis added.

Section 2 of the Note required Skin to make 120 equal monthly payments of principal and interest. In 2018 Skin and Dr. Mott defaulted on their payment obligations under the SPA, Note and Guaranty. On July 27, 2018 Lillis filed a state court collection lawsuit.

On March 8, 2019 Dr. Mott caused himself, Skin and LLD to file separate Chapter 11 bankruptcy petitions. On May 2, 2019, LLD, and Dr. Mott caused the Adversary Complaint herein to be filed against Defendants, asserting fifteen statutory, contract and tort claims, all in an effort to re-trade the $8.759 million purchase price, Plaintiffs claimed that the dermatology practice was only worth between $1.170 and $1.230 million when purchased.

**II. Plaintiff's Proposed Amended Complaint Allegations**

Plaintiffs now seek to amend the Adversary Complaint to add a sixteenth claim for relief- for a breach of fiduciary duty against Lillis - on the basis he was prohibited from entering into the 2016 Lease as well as an earlier LLD lease in 2012. Plaintiffs' proposed Amended Complaint alleges the following in pertinent part:

1. LLD is a Colorado Professional Corporation. Amend. Compl. ¶ 7.

2. Since its inception in 1979 until it was sold to Skin and Dr. Mott on October 16, 2016, LLD had been solely owned and operated by Lillis. *Id.* at ¶¶ 21, 56, 69, 157.

3. The LLD offices are leased from 790 Eisenhower, LLC ("Eisenhower"), a limited liability company owned solely by Lillis. *Id.* at ¶¶ 126-28.

4. Eisenhower, through its then sole owner, Lillis, first leased to LLD the LLD Offices on January 1, 2000 for a five year lease term ("**Original Lease**"). *Id.* at ¶¶ 128-29.

5. Eisenhower and LLD, through their sole owner Lillis, extended the Original Lease term through December 31, 2007. *Id.* at ¶ 130. The Original Lease term auto-renewed until October 31, 2011. *Id.* at ¶131.

6. On November 1, 2011, Eisenhower and LLD, each solely owned by Lillis, executed a new lease for the LLD Offices, for a ten year term, with the first year rent of approximately $156,000, and an annual escalation of 3% ("**2011 Lease**"). *Id.* at ¶¶ 56, 128, 132.

7. On August 1, 2012, Eisenhower and LLD, through each's sole owner Lillis, entered into a new lease for the LLD Offices ("**2012" Lease**"), intended to replace and supersede the 2011 Lease. The 2012 Lease increased the year one rent to approximately $259,000, constituting a monthly increase of approximately $9,000. *Id.* at ¶¶ 133-34.

8. The 2012 Lease extended the termination date of the 2011 Lease from October 31, 2021 to July 31, 2022. *Id.* at ¶ 136-37.

9. On June 1, 2016, Eisenhower and LLD, through each's sole owner Lillis, entered into a new lease for the LLD Offices ("**2016 Lease**"), intended to replace and supersede the 2012 Lease. The 2016 Lease increased the year one rent to approximately $307,000, at which time the annual rental rate under the 2012 Lease was $291,500; the 2016 Lease raised the base rent by over $15,000 annually. *Id.* at ¶¶ 144-46.

10. The 2016 Lease extended the termination date from July 31, 2022 to May 30, 2026. *Id.* at ¶ 147.

11. Lillis, as the sole owner of Eisenhower and LLD, did not cause LLD to be represented by counsel relative to its execution of the 2012 and 2016 Leases. *Id.* at ¶ 155.

12. Dr. Mott, through his own wholly owned company, Skin, purchased LLD from Lillis on October 16, 2016. *See Id.* at ¶ 69.

Alleging that Lillis breached a fiduciary duty to LLD by entering into the 2012 and 2016 Leases between Eisenhower and LLD, *Id.* at ¶¶ 235-42, Plaintiffs' proposed Sixteenth Claim rests on the faulty assertion that Lillis somehow owed fiduciary duties to his wholly owned entity, LLD. *Id.* at ¶ 238-241. In essence, Plaintiffs argue that the owner of a wholly entity owned is not free to manage such an entity as he sees fit or decide what lease rate one wholly owned company should pay his other wholly owned company. Under Plaintiffs' flawed reasoning, an owner of closely related wholly owned entities would be unable to arrange transactions between said entities so as to ensure that the entities mutually benefit their common, sole owner.

Because Plaintiff's proposed Sixteenth Claim fails as a matter of law, the amendment of the Adversary Complaint would be futile and should be denied under F.R.C.P. 15(a).

### III. Legal Standard

"Although leave to amend is to be freely granted, the liberal amendment principles of Rule 15(a) do not require the court to indulge in futile gestures. Leave to amend need not be granted where the amendments would serve no purpose." *Johnson v. Artemis*, 12-CV-01359-WJM-KLM, 2013 WL 3771311, at *2 (D. Colo. July 18, 2013) (citing *Zerman v. E.F. Hutton & Co., Inc.*, 628 F. Supp. 1509, 1511 (S.D.N.Y.1986)). *See also Forman v. Davis*, 371 U.S. 178,

182 (1962) (stating that "futility of amendment" constitutes a reason for denying a proposed amendment). Proposed amendments are futile when the amended complaint "would be subject to dismissal for any reason." *Swan v. Physician Health Partners, Inc.*, 212 F. Supp. 3d 1000, 1003 (D. Colo. 2016) (quoting *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001)). A complaint – or non-futile amendment – must present factual allegations that "raise a right to relief above the speculative level", and must contain "enough facts to state a claim to relief that is plausible on its face." *Aldridge v. Aleritas Capital Corp.*, 09-2178-CM-KGS, 2009 WL 10689361, at *5 (D. Kan. Oct. 1, 2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Leave to amend may be denied when a review of the additional facts contained in a proposed amended pleading would be insufficient to rescue a claim subject to dismissal. See *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint.*, Inc., 10-CV-02868-MSK-KMT, 2013 WL 1231875, at *8 (D. Colo. Mar. 27, 2013).

When reviewing whether a claim warrants dismissal, the Court must accept only well-pleaded facts as true, and may disregard claims that are based on "no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation omitted). Even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir.2008) (alteration marks omitted).

## IV. Argument

Plaintiffs' Motion should be denied. Their proposed claim is futile, failing as a matter of law, because no fiduciary duty was owed from Lillis to LLD, given that both LLD and Eisenhower were wholly owned by Lillis when the 2012 and 2016 Leases were signed. LLD, now owned by Skin and Dr. Mott, ought not be permitted to expand needlessly this litigation by concocting a claim that is meritless.

LLD is governed by the Colorado Corporations Business Act, C.R.S. § 7-101-101, *et. seq.* (**"CCBA"**)   At the time the 2011, 2012, and 2016 Leases were entered into, LLD was wholly owned and operated by Lillis; he alone was LLD's, director, officer, and shareholder. In the context of a corporation that, unlike LLD, is not wholly owned, the Colorado legislature has recognized the inherent risks of an entity's officers or directors engaging in business with other entities in which an officer or director has a financial interest. Accordingly, in C.R.S. § 7-108-501(1)(a), Colorado has instituted a statutory mechanism by which a corporation can seek to unwind a "conflicting interest transaction" wherein a director/officer engaged in business with another entity in which he or she also had an interest, thus ostensibly breaching a duty of loyalty.

The legislature also recognized that transactions between associated wholly-owned entities represent a unique circumstance in which the usual duty of loyalty does not apply. Excluded from the definition of a "conflicting interest transaction that can be unwound" is "any transaction between a corporation and another entity that owns, directly or indirectly, all of the outstanding shares of the corporation or all of the outstanding shares or other equity interests of which are owned, directly or indirectly, by the corporation."  § 7-108-501(1)(b).

At the time of the 2012 and 2016 Leases, Lillis, was the de facto parent of LLD and Eisenhower: he wholly owned each. Therefore, under to § 7-108-501(1)(b),  because LLD and Eisenhower had an common ownership link via Lillis, no duties were owed or breached by Lillis

in his management of either entity, and Lillis' execution of the Leases was proper under Colorado law. *Cf.* § 2:77. Directors—Fiduciary duty—Duty of loyalty, 1 Colo. Prac., Methods Of Practice § 2:77 (7th ed.) ("[§ 7-108-501(1)(b)] was added in 1996 to make it clear that transactions between parents and wholly owned subsidiaries are not conflicting interest transactions.").

Colorado courts have recognized that the CCBA is based on the Model Business Corporations Act, which was intended to facilitate a degree of national uniformity among state corporate law. *Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 365 (Colo. 2003). The Colorado Supreme Court has looked to decisions from other jurisdictions when ruling on issues of corporate law and the CCBA. *See id.* (applying a seminal case from Delaware to answer the question of whether a discount should be used in determining the fair value of a dissenter's shares).

The most prominent case addressing the duties owed by a parent entity to its wholly owned subsidiaries is *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988). In *Anadarko*, defendant parent corporation had recently spun-off its wholly owned subsidiary corporation via a stock dividend. *Id.* at 1172. After the stock dividend had been declared, but before the date of the distribution and formal split of the two companies, defendant parent, via its control of the subsidiary, approved several oil and gas contracts under which the subsidiary was obligated to sell to parent company discounted gas. *Id.* at 1173. After the two companies split, the subsidiary sued to void the oil and gas contracts, arguing a breach of a fiduciary duty on the part of the parent corporation. The court rejected the subsidiary's claims, stating that "in a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders." *Id.* at 1174. The court further held that there was no fiduciary duty owed to the

prospective stockholders of the subsidiary prior to the date of the actual dividend distribution, and that the prospective shareholders received notice of the disputed contracts through an information sheet issued before the split. *Id.* at 1166-67.

Other courts have applied *Anadarko* to hold that so long as a wholly owned entity is solvent, there are no distinct fiduciary duties owed from the parent to the wholly owned entity. *See e.g. VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 635 (3d Cir. 2007) (holding that it makes no sense to impose a duty on a the director of a solvent, wholly-owned subsidiary to be loyal to the subsidiary as against the parent company unless the subsidiary represents some minority interest in addition to the parent company or is insolvent); *Newsome v. Gallacher*, No. 11-CV-140-GKF-PJC, 2014 WL 2197793, at *4 (N.D. Okla. May 27, 2014) (same); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 173 (Del. Ch. 2006) ("Wholly-owned subsidiary corporations are expected to operate for the benefit of their parent corporations; that is why they are created. Parent corporations do not owe such subsidiaries fiduciary duties. . . . What Delaware law does not do is to impose retroactive fiduciary obligations on directors simply because their chosen business strategy did not pan out."). *Cf. Tow v. Amegy Bank N.A.*, 976 F. Supp. 2d 889, 906 (S.D. Tex. 2013) (stating that there is no "legal support for the proposition that a nonowner can be liable for conspiring with the sole owner of a partnership for breaching duties that the owner owes himself").

While Plaintiffs have made the bare allegation that LLD became insolvent at some point in time, *see* Amend. Compl. ¶ 33, Plaintiffs have not alleged with any specificity when or how LLD was supposedly insolvent, and the Court should not accept a claim that is based on no more than mere labels and conclusion as true. *Robbins*, 519 F.3d at 1247. Yet, it is noteworthy that, in their proposed Amended Complaint, at ¶ 51, Plaintiffs allege that, as of September 30, 2016 –

just days before the closing of the purchase by Plaintiffs – the practice "was worth between $1,170, 000 and $1,293,000."

Because Lillis, as the then sole owner of Eisenhower and LLD, owed no fiduciary duties to LLD at the time that he cause LLD and Eisenhower to enter into the 2012 and 2016 Leases, Plaintiffs' proposed breach of fiduciary duty fails as a matter of law, and amending the Adversary Complaint to add such a claim would be futile.

### V. Conclusion

For the reasons stated above, Defendants request that the Court deny Plaintiffs' Motion.

DATE: August 21, 2019

SENN VISCIANO CANGES, P.C.

/s/ *Frank W. Visciano*_____
Frank Visciano
1700 Lincoln Street, Suite 4300
Denver, CO 80203
Phone Number: (303) 298-1122
fvisciano@sennlaw.com

MARKUS WILLIAMS YOUNG & HUNSICKER

*/s/Matthew T. Faga*_____
Matthew T. Faga
Jennifer M. Salisbury
1700 Lincoln Street, Suite 4500
Denver, CO  80203
Phone Number: (303) 318-0120
mfaga@markuswilliams.com
jsalisbury@markuswilliams.com

**CO-COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2019 a true and correct copy of **OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT PURSUANT TO F.R.C.P. 15(a)** was served via email on the following:

Jordan D. Factor on behalf of Plaintiff Lake Loveland Dermatology P.C.
jfactor@allen-vellone.com ; la@allen-vellone.com

Michael T. Gilbert on behalf of Plaintiff Lake Loveland Dermatology P.C.
mgilbert@allen-vellone.com

Jeremy T. Jonsen on behalf of Plaintiff Lake Loveland Dermatology
jjonsen@allen-vellone.com

Lance J. Goff on behalf of Plaintiff Kevin John Mott
lance@goff-law.com ; bart@goff-law.com

Lee M. Kutner on behalf of Plaintiff Skin P.C.
lmk@kutnerlaw.com ; vlm@kutnerlaw.com

*/s/ Adriana Vega*_____
ADRIANA VEGA